# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **PAMELA G. ALEXANDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:10-0107** |
| **v.** | ) | **Judge Wiseman/Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI") benefits, as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") benefits on April

3, 2008, alleging that she had been disabled since June 1, 2005, due to a broken foot, dizziness

and a lack of sleep due to panic attacks and anxiety attacks.  *See, e.g.,* Docket No. 10,

Attachment ("TR"), pp. 81, 103, 107.  Plaintiff's application was denied both initially (TR 37)

and upon reconsideration (TR 38).  Plaintiff subsequently requested (TR 48) and received (TR

24-36) a hearing.  Plaintiff's hearing was conducted on February 3, 2010, by Administrative Law

Judge ("ALJ") George L. Evans, III.  TR 24.  Plaintiff appeared and testified.  TR 25.

On March 26, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 9-

20.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant has not engaged in substantial gainful activity since April 3, 2008, the application date (20 CFR 416.971 *et seq*.).
>
> 2.  The claimant has the following impairments, the combination of which is severe: *history of impaction microfracturing of the posterolateral talus and, to a lesser extent, the tibiam, with post-traumatic capsulosynovitis; musculoskeletal cervicalgia; sensory polyneuropathy with right shoulder segmental pain, right hemicranial cephalgia, restless leg syndrome, and nocturnal myoclonus; and branch vessel coronary artery disease with atypical angina pectoris and hypertension* (20 CFR 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual

functional capacity to perform the *full range of light work* as defined in 20 CFR 416.967(b).

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on January 24, 1959 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since April 3, 2008, the date the application was filed (20 CFR 416.920(g)).

TR 11-20 (emphasis original).

On May 3, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 149. On September 14, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985)

(*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it

5

must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*,

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) improperly weighing the medical opinions of Plaintiff's treating physician, Dr. Brij Rana; 2) "completely ignoring" Plaintiff's treatment for heart disease; 3) finding that Plaintiff retains the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b); and 4) improperly relying on the Medical-Vocational Guidelines as set out in 20 CFR Part 404, Subpart P, Appendix 2. Docket No. 13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir.1994).

**1. Weight Accorded to Plaintiff's Treating Physician**

Plaintiff contends that the ALJ failed to give "good reasons" for the weight assigned to the opinions of Dr. Brij Rana, Plaintiff's treating physician for approximately ten years. Docket No. 13. As apparent support for her argument that Dr. Rana's opinion should have been accorded greater weight, Plaintiff offers the fact that, based on her subjective complaints, Dr. Rana, an internal medicine specialist, referred her to the additional specialists of Dr. Ngo (for neurological complaints), Dr. Kanagasegar (for arthritis), and Dr. Case (for heart symptoms). *Id.*

Defendant responds that the ALJ properly evaluated Dr. Rana's medical opinion and properly articulated his reasons, supported by specific references to the evidence, for not adopting the limitations Dr. Rana provided. Docket No. 20. Specifically, Defendant contends that the ALJ found that Dr. Rana's opinion was inconsistent with the evidence of record, including Dr. Kanagasegar's findings, Plaintiff's reported daily activities, and Dr. Rana's own treatment notes. *Id.* Defendant also maintains that Dr. Rana's opinion was based upon Plaintiff's subjective complaints, which the ALJ properly discounted. *Id.* Defendant argues that Dr. Rana's referral of Plaintiff to other specialists actually demonstrates that Dr. Rana lacked relevant expertise and was unable to evaluate or treat her impairments herself. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical
> opinion we receive. Unless we give a treating source's opinion

controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

It is undisputed that Dr. Rana has treated Plaintiff for approximately ten years, and is, therefore, a treating physician. As a treating physician, the Regulations permit the ALJ to accord controlling weight to Dr. Rana's opinion, as long as that opinion is consistent with, and supported by, the evidence of record. *See* 20 C.F.R. § 416.927(d).

Dr. Rana opined, in his February 2, 2010, Medical Assessment of Ability to Perform Activities (Physical) form, that Plaintiff could occasionally lift or carry less than 10 pounds; frequently lift or carry less than 10 pounds; stand and/or walk (with normal breaks) for a total of less than 2 hours in an 8-hour workday; and sit (with normal breaks) for a total of less than 6 hours in an 8-hour workday. TR 321. As support for these findings, Dr. Rana noted Plaintiff's neck and shoulder pain, her ankle swelling, her "feeling of needles in her feet," and her back becoming "stiff" such that she "cannot move a lot." *Id.* Dr. Rana also noted that "walking feels as if she has weights on her shoulders," and that Plaintiff "does have significant arthritis in [her] shoulders and ankles" with decreased range of motion.[2] *Id.*

Despite the fact that Dr. Rana is a treating physician, the ALJ in the case at bar found that Dr. Rana's determinations regarding Plaintiff's ability to do work-related activities were not credible, and did not accept his residual functional capacity assessment of Plaintiff. TR 18. Specifically, the ALJ explained:

---

[2]As noted by the ALJ, specialist Dr. Kanagasegar's findings later ruled out inflammatory arthropathy or rheumatoid arthritis. TR 13, 361-63.

> While the undersigned recognizes the significance that is normally accorded to the opinion of a treating physician, Dr. Rana's conclusions are not supported by the objective medical findings or the record as a whole. His conclusions are, at best, tenuous, patently sympathetic to the claimant's subjective complaints, and unsupported by the objective findings.

*Id.*

The ALJ continued:

> [Dr. Rana] based the claimant's inability to stand for more than 2 hours on her subjective complaint of 'feeling needles in her feet,' and he cited her subjective complaints of stiffness in her back as support for her sitting limitation. The lifting restrictions he assigned are based on 'neck pain' that is unsupported by the objective tests insofar as radiographic imagery of the cervical spine was entirely unremarkable.

TR 18, *citing* TR 321.

The ALJ, therefore, explained that he declined to accept Dr. Rana's conclusions with regard to Plaintiff's residual functional capacity because they were based on Plaintiff's subjective complaints of pain. As has been noted, the treating physician's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 416.927(d).

Additionally, as discussed by the ALJ, Dr. Rana's opinion is inconsistent with other substantial evidence in the record, including the findings of Dr. Kanagesegar and Dr. Ngo, both to whom Dr. Rana referred Plaintiff. TR 12-13. Specifically, the ALJ explained:

> Regarding the claimant's alleged back pain, the physical examinations have been entirely unremarkable. An April 24, 2009 physical examination revealed some pain at the back of the neck with some tenderness and muscle spasming; however, ***range of motion at the neck was normal*** (Exhibit 14F, p. 42). While Dr. Kanagasegar's May 8, 2009 physical examination revealed some

tenderness and spasming at the cervical spine and *mild* tenderness around the lower lumbar spine, he noted ***normal ranges of motion*** and ***negative straight leg raising bilaterally*** (Exhibit 14F, p. 44). A concurrent CT scan of the cervical spine was likewise notably unremarkable, revealing a ***well-aligned cervical spine without fracture*** and only *mild* marginal spurring (*Id.*). In fact, Dr. Kanagasegar noted that the claimant's current treatment "really helps" (*Id.*). There is no evidence of any herniated discs, spinal stenosis, neuroforaminal narrowing, or nerve root impingement. Only conservative treatment with medication has ever been recommended. Surgery has never been recommended.

As for the claimant's alleged neuropathy, October 13, 2008 electromyography revealed predominantly sensory polyneuropathy without multifocal demyelination (Exhibit 10F, p. 2); however, in April 2009, Dr. Kanagasegar remarked that prescribed gabapentin "helped good [*sic*]" (Exhibit 14F, p. 42). Further, there was no evidence of inflammatory arthropathy or rheumatoid arthritis (Exhibit 14F, p. 44).

Concerning the claimant's alleged chronic headaches, while the undersigned notes Dr. Thuy T. Ngo's impression of right hemicranial cephalgia (Exhibit 10F, p. 5), there is no evidence of any mass-occupying lesions or brain abnormalities. A March 26, 2009 CT of the brain showed no acute intracranial findings (Exhibit 14F, p. 19). Therefore, Dr. Ngo's diagnosis is clearly based largely on the claimant's own subjective complaints, which are quite unreliable for the reasons explained throughout this decision.

*Id.* (emphasis in original).

Plaintiff also reported daily activities that the ALJ determined were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." TR 16.

As the ALJ stated, Plaintiff reported engaging in the following daily activities:

[P]ersonal care and hygiene, caring for her young son, roller skating, reading, shopping for two hours a week, attending bible studies once per week in someone else's home, household chores including cleaning, laundry, and ironing; cooking "every day and night," driving a car, attending church, going outside alone daily,

> paying bills, counting change, handling a savings account, and
> using a checkbook and/or money orders ... work[ing] outside in the
> yard, walk[ing] in the park, bike riding, home-school[ing] her son,
> run[ning] errands, and exercis[ing] on a daily basis.

*Id.*

The ALJ noted that such activities are not those of an individual with totally disabling physical and/or mental conditions (*id.*), and the ability to engage in such activities conflicts with the abilities opined possible by Dr. Rana.

Dr. Rana treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions, as long as his opinion was consistent with, and supported by, the evidence of record. As has been demonstrated, however, Dr. Rana's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *Id.*; 20 C.F.R. § 416.927(e)(2).

Because Dr. Rana's opinion was inconsistent with, and unsupported by, the evidence of record, the Regulations do not mandate that the ALJ accord Dr. Rana's evaluation controlling weight. Additionally, as can be seen, the ALJ clearly articulated his reasons for discounting Dr. Rana's opinion; the Regulations do not require more. Plaintiff's argument fails.

## 2. Plaintiff's Treatment for Cardiac Impairment

Plaintiff also argues that Dr. Case opined that she has a severe cardiac impairment, and that the ALJ "completely ignored" Plaintiff's treatment for this disease. Docket No. 13. Defendant responds that the ALJ specifically identified the impairment in combination with other impairments and sufficiently discussed Plaintiff's treatment for heart disease. Docket No. 20.

Despite Plaintiff's assertion that the ALJ "completely ignored" Plaintiff's treatment for her cardiac impairment, the ALJ explicitly referenced and acknowledged Plaintiff's heart disease on several occasions throughout his decision. TR 11, 12. In fact, the ALJ explicitly identified Plaintiff's heart disease, in combination with other impairments, as a severe impairment. TR 11. Specifically, the ALJ identified that Plaintiff had "branch vessel coronary artery disease with atypical angina pectoris and hypertension." *Id.* Additionally, the ALJ noted Plaintiff's testimony that "anxiety, heart problems, and arthritis keep her from working." TR 11, *citing* TR 29-30. Moreover, the ALJ acknowledged that Plaintiff reported taking high blood pressure medication and three medications for her heart. TR 12, *citing* TR 31.

As can be seen by the ALJ's explicit acknowledgment of her "branch vessel coronary artery disease with atypical angina pectoris and hypertension," her testimony, and her high blood pressure and heart medication, as well as his explicit inclusion of Plaintiff's heart disease, in combination with other impairments, as a severe impairment, the ALJ did not "completely ignore[]" Plaintiff's cardiac impairment. Plaintiff's claim, therefore, fails.

### 3. Residual Functional Capacity

Plaintiff next argues that the ALJ's finding that Plaintiff retained the residual functional

capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. 416.967(b) was

not supported by substantial evidence. Docket No. 13. Specifically, Plaintiff maintains that the

ALJ erroneously "relied heavily" upon the opinion of state agency medical doctor, Susan

Warner, M.D, rather than upon the opinions of Drs. Rana, Kanagasegar, and Case (discussed

above). *Id.*

Defendant responds that, contrary to Plaintiff's assertion that the ALJ "relied heavily" on

Dr. Warner's opinion, the ALJ actually accorded only "some weight" to Dr. Warner's opinion,

as evidenced by the fact that the ALJ's ultimate RFC assessment of Plaintiff differs from Dr.

Warner's assessment. Docket No. 20. Specifically, Defendant emphasizes the fact that Dr.

Warner's opinion was that Plaintiff was capable of performing a nearly "full range of *medium*

work," while the ALJ ultimately found Plaintiff capable of only performing the more restrictive

"full range of *light* work." *Id.* (emphasis original).

On December 16, 2008, state agency physician, Dr. Warner, completed a Physical

Residual Functional Capacity Assessment regarding Plaintiff. TR 311-19. In that assessment,

Dr. Warner opined that Plaintiff could occasionally lift and/or carry up to 50 pounds; frequently

lift and/or carry up to 25 pounds; stand and/or walk for a total of about 6 hours in an 8-hour

workday; sit for a total of about 6 hours in an 8-hour workday; and push and/or pull without

limitation. TR 312. Dr. Warner also opined that Plaintiff did not experience any postural,

manipulative, visual, or communicative limitations, but did have the environmental limitation of

needing to avoid all exposure to hazards such as machinery and heights because of her "episodes

of dizziness." TR 313-16.[3]

Although Dr. Warner opined that Plaintiff could perform the full range of medium work, the ALJ, after evaluating all of the medical and testimonial evidence of record, determined that Plaintiff retained the residual functional capacity to perform the full range of light work. TR 14. 20 C.F.R. 416.967(b) defines light work as:

> *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*Id.*

As an initial matter, the ALJ properly evaluated the opinions of Drs. Rana, Kanagasegar, and Case. There is nothing in the Regulations that mandates that an ALJ base an RFC determination on unsupported or inconsistent medical opinions. Plaintiff's argument that the ALJ should have relied on the opinions of Drs. Rana, Kanagasegar, and Case in forming Plaintiff's RFC determination fails for the reasons discussed above.

Additionally, the ALJ did not "rely heavily" on Dr. Warner's opinion that Plaintiff could perform a full range of medium work when determining that Plaintiff could perform a full range

---

[3]Dr. Warner's findings meet the definition of medium work. Medium work is defined as: lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. 416.967(b).

of light work.  The ALJ specifically articulated that he gave "some weight" to Dr. Warner's findings because her opinion was generally consistent with evidence in the record (TR 19), but rather than "relying heavily" on any one opinion, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  TR 15.  The ALJ specifically referenced Plaintiff's subjective limitations as alleged in her Disability Report, appellate Disability Report, and Pain Questionnaire.  TR 15-16, *citing* TR 102, 125, 143.  He ultimately found, however, that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects were not fully credible.  TR 15.  In fact, the ALJ noted that Plaintiff's descriptions of the severity of her pain and other symptoms were "so extreme as to appear implausible," and that they were "atypical of the impairments documented by medical findings in this case."  *Id.*

As has been discussed above, the ALJ also recounted Plaintiff's reported daily activities, and properly determined that they were not the activities of an individual with totally disabling physical and/or mental conditions.  TR 16.  Additionally, the ALJ reviewed Plaintiff's work history, and noted that Plaintiff had worked "only sporadically" prior to her alleged disability onset date (with her longest job lasting for 3 months), "which raises a question as to whether [Plaintiff's] continuing unemployment is actually due to medical impairments."  TR 16.  The ALJ further noted that, contrary to her sworn testimony, Plaintiff had worked in November 2006 and December 2007 (both after her alleged onset date).  TR 16-17.  The ALJ observed that, although these positions appeared to be holiday season work and did not constitute substantial gainful activity as defined in the Regulations, Plaintiff's providing of "inaccurate information

*under oath* on a matter so integral to determining disability suggests that much of what the claimant has alleged may be similarly unreliable." TR 17 (emphasis in original).

The ALJ also observed that Plaintiff had not generally received the type of medical treatment that one would expect for a totally disabled individual, "which suggests that [Plaintiff's] symptoms may not have been as serious as has been alleged in connection with her application and appeal." TR 16-17. Specifically, the ALJ noted that the record reflects gaps in Plaintiff's treatment history, and reflects that when she did receive treatment, that treatment was "essentially routine and/or conservative in nature." TR 17. The ALJ also noted that Plaintiff has been prescribed and has taken "appropriate medications" that have been "generally effective." He further discussed the facts that the reported side effects of those medications (such as numbness and weight gain) are not well documented in the treating record and that they would have had no more than a minimal effect on her ability to perform work-related activities. *Id.*

The ALJ also considered Plaintiff's generally unpersuasive appearance and demeanor while testifying at the hearing. TR 17. While the ALJ emphasized that Plaintiff's appearance and demeanor were but one observation "among many being relied on in reaching a conclusion regarding the credibility of" Plaintiff's allegations and residual functional capacity, the ALJ noted that:

> [T]he apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity. Also, the claimant's responses while testifying were evasive or vague at times, and left the impression that the claimant may have been less than entirely candid. She provided very brief responses to direct questions while testifying, and volunteered very little additional information.

TR 17.

As can be seen, the ALJ discussed in great detail each of the factors influencing his determination; he did not rely "heavily" on any one opinion. TR 15-19. Plaintiff's argument that the ALJ erroneously relied "heavily" on Dr. Warner's opinion, therefore, fails.

## 4. Reliance on the Grid Rules

Plaintiff argues that the ALJ's reliance upon the medical-vocational guidelines ("Grid") is improper because Dr. Warner noted that Plaintiff would have to change her posture frequently, and that she should avoid hazards secondary to episodes of dizziness. Docket No. 13. Plaintiff emphasizes that the grid regulations could not direct a finding of "not disabled" if the claimant had nonexertional limitations which prevented performance of a wide range of work at a designated level of exertion. *Id.*, *citing Kirk v. Secretary of health and Human Services*, 667 F.2d 524 (6th Cir. 1981). Plaintiff argues that she has such nonexertional impairments. Docket No. 13.

Defendant responds that Plaintiff has "mischaracterized" Dr. Warner's opinion, because Dr. Warner actually indicated that Plaintiff did not experience any postural limitations. Docket No. 20. Defendant also responds that Dr. Warner's opinion that Plaintiff should avoid hazards secondary to dizziness was based largely on Plaintiff's subjective complaints, which the ALJ found to be less than fully credible. *Id.*

Although Plaintiff correctly asserts that an ALJ cannot blindly apply the grid rules when a plaintiff is significantly limited by nonexertional limitations, Plaintiff fails to show either that she is "significantly limited" by her nonexertional limitations, or that the ALJ "blindly" applied the grid rules.

In her Physical Residual Functional Capacity Assessment, Dr. Warner opined that Plaintiff did not experience any postural limitations with respect to climbing, balancing, stooping, kneeling, crouching, or crawling (TR 313), but she did note that her ultimate RFC finding of Plaintiff was "reduced to 50/25/6/6 w/ frequent posturals" (TR 318). Dr. Warner noted that "pain [was] considered" in her reduction of Plaintiff's RFC. *Id.* With respect to Dr. Warner's opinion that Plaintiff should avoid hazards secondary to episodes of dizziness, Dr. Warner noted that Plaintiff reported being dizzy and falling "often due to lack of sleep due to anxiety." *Id.*

Although Dr. Warner cites Plaintiff's subjective reports, she does not cite any objective medical evidence demonstrating that Plaintiff "gets dizzy and falls often," or that Plaintiff would need to change her posture frequently. *See* TR 318. In fact, Dr. Warner specifically noted that Plaintiff has "no postural instability," and that her "station, coordination, and gait [are] intact." *Id.*

As has been discussed above, the ALJ found Plaintiff to be less than fully credible. In so finding, the ALJ discussed in detail the medical and testimonial evidence, and properly explained his reasons for discounting Plaintiff's credibility and subjective complaints. Because Dr. Warner based her opinions that Plaintiff would need "frequent posturals" and should avoid hazards secondary to episodes of dizziness on Plaintiff's subjective complaints, the ALJ was not required to accept them.

The medical record in the case at bar is replete with clinical findings, laboratory test results, physician reports, diagnoses, assessments, and prognoses that fail to indicate that Plaintiff suffers from nonexertional impairments that affect her ability to perform work at a

particular exertional level. Without a showing of nonexertional impairments preventing the performance of a wide range of work at a designated level of exertion, the ALJ could properly rely on the Grid. The ALJ properly evaluated the evidence at step five to establish Plaintiff's ability to work. The ALJ's decision, therefore, must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be Denied, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


_____
E. CLIFTON KNOWLES
United States Magistrate Judge